Filed 8/30/23  In re L.R. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| In re L.R. et al., Persons Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>R.R. et al.,<br><br>     Defendants and Appellants. | E080714<br><br>(Super.Ct.No. RIJ2000251)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Dorothy McLaughlin, Judge.  Conditionally affirmed and remanded with directions.

Michelle L. Jarvis, under appointment by the Court of Appeal, for Defendant and Appellant R.R.

Jesse McGowan, under appointment by the court of Appeal, for Defendant and Appellant E.D.

1

Minh C. Tran, County Counsel, Teresa K.B. Beecham and Larisa R-McKenna, Deputy County Counsel for Plaintiff and Respondent.

In this appeal following the termination of parental rights, defendants and appellants E.D. (mother) and R.R. (father) contend only that the county welfare department failed to comply with California law implementing the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.; ICWA).[1] Relying on Welfare and Institutions Code, section 224.2, subdivision (b), the parents argue the department failed to discharge its duty of initial inquiry because it did not ask several extended family members whether the children have any Indian ancestry.[2] The department, relying on *In re Robert F.* (2023) 90 Cal.App.5th 492, review granted July 26, 2023, S279743 (*Robert F.*) and *In re Ja.O.* (2023) 91 Cal.App.5th 672, 680-681, review granted July 26, 2023, S280572 (*Ja.O.*), argues that it had no duty to ask extended family members about possible Indian ancestry. In the alternative, the department argues that it satisfied that duty by conducting a sufficient inquiry, and that any arguable error was harmless.

Absent further instruction from our Supreme Court, we reject the Department's arguments based on *Robert F.* and *Ja.O.* because we disagree with those cases' interpretation of the relevant statutes. We find the analysis of *In re Delila D.* (2023) 93

---

[1] "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1 (*Benjamin M.*).)

[2] Undesignated statutory references are to the Welfare and Institutions Code.

Cal.App.5th 953, (*Delila D.*) more persuasive. We disagree with the department that it conducted a sufficient inquiry, as it failed to ask several available extended family members about possible Indian ancestry. We also disagree with the department that the error was harmless, as the record indicates that there was "readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child." (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744.) The department's arguments that *Benjamin M.* was wrongly decided are unpersuasive. We conditionally affirm and remand with directions.

BACKGROUND

Mother and father are the parents of L.R. (born June 2015). I.M. (born January 2018) and L.R. have the same mother, but different fathers. I.M.'s father is not a party to this appeal.

In April 2020, plaintiff and respondent Riverside County Department of Public Social Services (the department) filed a dependency petition, alleging that they both came within section 300, subdivision (b)(1) (failure to protect), and that L.R. also came within subdivision (g) (no provision for support). The children were initially left in parental care.

In July 2020, the department filed an amended petition, requesting that the children be detained from their respective fathers. Father had been arrested for robbery in June 2020, and remained incarcerated. I.M.'s father was arrested in July 2020 on three

3

counts of attempted murder.  The juvenile court detained the children from their fathers, leaving the children in mother's care.

In January 2021, the department obtained protective custody warrants to detain the children from mother.  In a section 387 supplemental petition filed several days later, the department alleged mother had failed to comply with her case plan and neglected the children.  The juvenile court detained the children out of mother's care and ordered that "temporary placement and care is vested with [the department] pending the hearing under [section 355] or further order of the court."

During the dependency, mother and both fathers denied any Indian ancestry.  The available maternal extended relatives—grandmother and a great aunt—also denied any Indian ancestry, as did both paternal grandmothers and a paternal aunt to L.R.  The record does not demonstrate, however, that three other paternal extended relatives were ever asked whether the children are or may be Indian children, even though the department was in contact with them about other matters.  These three extended relatives are a second paternal aunt of L.R. and a paternal aunt and uncle of I.M.

Reunification efforts were unsuccessful.  In February 2023, the juvenile court terminated parental rights as to both children.  Mother and father appealed, but I.M.'s father did not.

## DISCUSSION

Relying on *Robert F.* and *Ja.O.*, the department contends that it had no duty to contact the paternal extended relatives omitted from the ICWA inquiry.  This conclusion

4

follows from those cases' reasoning. We are not persuaded, however, that the reasoning of those cases is correct.

Under California law, the juvenile court and county child welfare department have "an affirmative and continuing duty to inquire" whether a child subject to a section 300 petition may be an Indian child. (§ 224.2, subd. (a); see *In re D.F.* (2020) 55 Cal.App.5th 558, 566 (*D.F.*).) "This continuing duty can be divided into three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice." (*D.F.*, at p. 566.) Only the first of these phases is at issue in this appeal.

In every dependency proceeding, the department has an initial duty to inquire into whether a child is an Indian child. (*In re J.S.* (2021) 62 Cal.App.5th 678, 686.) "The department's 'duty to inquire begins with the initial contact, including, but not limited to, asking the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child.'" (*Robert F.*, *supra*, 90 Cal.App.5th at p. 499; see § 224, subd. (a); Cal. Rules of Court, rule 5.481, subd. (a) (rule 5.481).) "In addition, '[f]ederal regulations require state courts to ask each participant "at the commencement" of a child custody proceeding "whether the participant knows or has reason to know that the child is an Indian child."'" (*Robert F.*, at pp. 499-500; see 25 C.F.R. § 23.107(a) (2022).) As well, state law requires the court to inquire "''[a]t the first appearance in court of each party''" by asking "'''each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child." (§ 224.2, subd. (c).)'" (*Robert F.*, at p. 500.)

5

"[U]nder subdivision (b) of section 224.2, '[i]f a child is placed into the temporary custody of a county welfare department pursuant to Section 306,' the department's obligation includes asking the 'extended family members' about the child's Indian status."[3] (*Robert F*., *supra*, 90 Cal.App.5th at p. 500.) This language was added by Assembly Bill No. 3176 (2017-2018 Reg. Sess.), which made various ICWA related changes to the Welfare and Institutions Code, effective January 1, 2019. (Stats. 2018, ch. 833 (A.B. 3176), § 5.) Similar language appears in rule 5.481 of the California Rules of Court, which the Judicial Council revised to implement section 224.2, subdivision (b): "The party seeking a foster-care placement, . . . termination of parental rights, preadoptive placement, or adoption must ask the child, if the child is old enough, and the parents, Indian custodian, or legal guardians, *extended family members*, others who have an interest in the child, and where applicable the party reporting child abuse or neglect, whether the child is or may be an Indian child . . . ." (rule 5.481 (italics added).)

Following the concurring opinion in *In re Adrian L.* (2022) 86 Cal.App.5th 342, 357-358 (*Adrian L.*), *Robert F.* equates the phrase "'placed into the temporary custody of a county welfare department pursuant to Section 306'" with exercise of the department's authority under section 306, subdivision (a)(2) "to take children into temporary custody 'without a warrant' in certain circumstances." (*Robert F.*, *supra*, 90 Cal.App.5th at p.

---

[3] Section 224.2, subdivision (b), also applies when a child is placed in the temporary custody of a county probation department pursuant to section 307. But then it is the county probation department's duty of inquiry, and not the county welfare department's. (See § 224.2, subd. (b).)

497; see *Adrian L.*, *supra*, 86 Cal.App.5th at pp. 357-358 (conc. opn. of Kelley, J.).) According to *Robert F.* and the *Adrian L.* concurrence, "[a] department that takes a child into protective custody pursuant to a warrant does so under section 340, not section 306." (*Robert F.*, at p. 497.) *Ja.O.* adopted the same reading of section 224.2, subdivision (b). (*Ja.O.*, *supra*, 91 Cal.App.5th at pp. 680-681.)

Recently, however, *Delila D.* declined to follow *Robert F.*, finding its holding "contrary to both the letter and spirit of Assembly Bill 3176." (*Delila D.*, *supra*, 93 Cal.App.5th at p. 962.) Instead, *Delila D.* concluded "there is only one duty of initial inquiry, and that duty encompasses available extended family members no matter how the child is initially removed from home." (*Ibid.*) Under *Delila D.*'s analysis of section 224.2, subdivisions (a) and (b), together with rule 5.481, social workers have "a duty of initial inquiry that begins at first contact, lasts throughout the proceeding, and includes 'but is not limited to' the reporting party, the child's parents and extended family members, and others who have an interest in the child, as those individuals become available during the case." (*Delila D.*, at p. 966.)

This conflict in authority is currently under review by our Supreme Court, with *In re Ja.O.* as the lead case. We find *Delila D.*'s thoughtful discussion of the statutory language and legislative history persuasive, and adopt its reasoning and conclusions, pending our Supreme Court's resolution of the conflict.

Applying *Delila D.* to this case, the department's initial duty of inquiry— including the ongoing duty to inquire of extended family members who become available

7

during the case—was triggered in January 2021, when the children were detained out of mother's care, after having been previously detained from their respective fathers, and the department then maintained the children in temporary custody, as authorized by section 306, subdivision (a)(1). We decline to follow the reasoning of *Ja.O.*, *Robert F.*, or the *Adrian L.* concurrence that would lead to a different result.

Our next questions, then, are whether the department satisfied that expanded duty of inquiry and, if not, whether failing to do so was harmless. We answer both questions in the negative.

Relying on *In re Ezequiel G.* (2022) 81 Cal.App.5th 984 (*Ezequiel G.*) and *In re J.K.* (2022) 83 Cal.App.5th 498 (*J.K.*), the department argues that the ICWA inquiry it conducted was adequate, even though it did not "contact every extended family member including every aunt, uncle, and first and second cousin." Certainly, we agree that the department was only required to make "*reasonable* and diligent efforts to conduct the required inquiry and report those efforts and the results thereof to the court." (*J.K.*, at p. 508, fn. 7.) No one is asserting that the department was required to "undergo overly voluminous record searches, attend family reunions, conduct stakeouts, or search Ancestry.com. Nor [is it] required to interview young children or other extended family members who would not be expected to have any information regarding the child's Indian status." (*Ibid.*) We are not persuaded, however, that an inquiry may be considered reasonable and diligent when the department fails to inquire of extended

8

relatives who *are* readily available and reasonably might have information regarding the child's Indian status. To the extent *Ezequiel G.* holds otherwise, we decline to follow it.

We find no merit in the department's suggestion that deference to the trial court's credibility findings requires that we find the ICWA inquiry adequate. The issue is not whether any relatives who denied Native American heritage were telling the truth, so far as they knew, but rather whether there are other relatives who are readily available for inquiry and may have different information. (See *In re Y.W.* (2021) 70 Cal.App.5th 542, 554 [to accept a parent's denial of any knowledge of Indian ancestry, without further inquiry, "ignores the reality that parents may not know their possible relationship with or connection to an Indian tribe"]; *In re T.G.* (2020) 58 Cal.App.5th 275, 289 ["Oral transmission of relevant information from generation to generation and the vagaries of translating from Indian languages to English combine to create the very real possibility that a parent's or other relative's identification of the family's tribal affiliation [or lack thereof] is not accurate"].)

In short, the department did not fulfill its duty of initial inquiry under ICWA because it failed to ask three readily available extended relatives whether the children are or might be Indian children. The trial court erred by finding ICWA did not apply, even though the department had not fulfilled its duty of initial inquiry. We turn, then, to the issue of whether the error should be considered harmless error.

There are multiple approaches to assessing harmlessness in the ICWA context, and the issue is currently under review by our Supreme Court. (See *In re Dezi C.* (2022) 79

9

Cal.App.5th 769, 777-782, review granted Sept. 21, 2022, S275578).) We will apply the approach we described in *Benjamin M.*, *supra*, 70 Cal.App.5th at p. 739. That is, we will find prejudice when an agency "fail[s] to investigate readily obtainable information tending to shed meaningful light on whether a child is an Indian child." (*Ibid.*) Even where the agency has erred, however, it may be that, "considering the entire record, it was obvious that additional information would not have been meaningful to the inquiry." (*Id.* at p. 743) "This might occur where the evidence already uncovered in the initial inquiry was sufficient for a reliable determination." (*Ibid.*)

The department is incorrect to suggest that the *Benjamin M.* approach (which parents agree we should apply) "essentially" amounts to a "reversible per se" standard. There are circumstances where the record could demonstrate that the initial inquiry was sufficient for a reliable determination, even though there was an erroneous failure to inquire of some extended relatives. For example, in theory, the department could have uncovered information affirmatively showing the children were disqualified from tribal membership. (Cf. *In re J.M.* (2012) 206 Cal.App.4th 375, 382 [tribe's membership criteria showed children disqualified from membership "irrespective of their great-great grandparents' possible membership in the tribe"].) In some circumstances, a thorough, but not perfect, inquiry can suffice for a reliable determination, despite some omissions. (See *In re Rylei S.* (2022) 81 Cal.App.5th 309, 325 [discussing hypothetical where agency "interviews the maternal grandfather; several, but not all of his four siblings; and the maternal grandfather's surviving parent, none of whom indicates the family has any

10

Indian ancestry," and concluding that the "failure to interview the grandfather's remaining siblings would certainly be harmless absent some additional unusual circumstance"].)

Here, the department properly inquired of several extended family members. Nevertheless, though we find it a close question, we do not find this to be a circumstance where the inquiry suffices, despite some omissions. Although the two paternal grandmothers were available and denied any Native American heritage, the two paternal grandfathers were not asked.[4] On the two paternal sides of the children, the department failed to inquire of three of six readily available extended family members. In this circumstance, it is likely that the three family members omitted from the inquiry would have information that would bear meaningfully on the issue of whether the children are Indian on their paternal side, either by confirming information previously obtained or by providing new information.

We are not persuaded by the department's comparison of this case to *In re S.S.* (2022) 75 Cal.App.5th 575 or *In re Y.M.* (2022) 82 Cal.App.5th 901. In both *S.S.* and *Y.M.*, the extended relatives who were omitted from the inquiry had compelling reasons to volunteer that they knew the family had Native American ancestry, even if not affirmatively asked about it by the department, and the court of appeal inferred from their failure to come forward that they were unlikely to have any such knowledge. (*In re Y.M.*,

---

[4] The parents have not argued that the grandfathers were reasonably available for inquiry, though we have not determined from the record why they were unavailable.

11

*supra*, at pp. 917-918; *In re* S.S., *supra*, at pp. 582-583.)  There is no basis for any similar inference here.

We conclude that the department's failure to ask readily available extended family members whether the children are or may be Indian children is not harmless, and the matter must be remanded for the department to complete the required inquiry.

### DISPOSITION

The orders terminating parental rights to L.R. and I.M. are conditionally affirmed. We remand to the juvenile court for the department and the court to comply with the inquiry and notice provisions of ICWA and California law consistent with this opinion, including inquiring of extended family members.  If the court finds the children are Indian children, it shall conduct a new section 366.26 hearing, as well as all further proceedings, in compliance with ICWA and related California law.  If not, the court's original section 366.26 orders will remain in effect.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL
J.

I concur:

McKINSTER
Acting P. J.

12

[*In re L.R.*, E080714]

MILLER, J., Dissenting

I respectfully dissent to the majority opinion. E.D. (Mother) and R.R. (Father) contend the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) inquiry was insufficient because the Riverside County Department of Public Social Services (the Department) failed to ask extended relatives of E.D. and R.R. about possible Indian ancestry. Mother and Father assert the Department had a duty to question extended relatives under Welfare and Institutions Code section 224.2, subdivision (b), and *In re Delila D.* (2023) 93 Cal.App.5th 953.

I believe *In re Robert F.* (2023) 90 Cal.App.5th 492, 500-501, correctly concluded that the Department's duty to initially question extended relatives is only triggered when children are removed without protective custody warrants. In this case, because the children were removed with protective custody warrants, the Department did not have an initial duty to question extended relatives about possible Indian ancestry. I would affirm.

MILLER _____

J.

1